**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Action No.  1:21-cv-01261-SKC**

MILLENNIUM FUNDING, INC.
LHF PRODUCTIONS, INC.
HUNTER KILLER PRODUCTIONS, INC.
OUTPOST PRODUCTIONS, INC.
EVE NEVADA, LLC and
VOLTAGE HOLDINGS, LLC,

       Plaintiffs,

v.

SHARKTECH, INC. and
TIM MOUHIEDDINE TIMRAWI,

       Defendants.

---

**DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
AND IMPROPER VENUE; ALTERNATIVELY, FOR TRANSFER TO THE DISTRICT
OF NEVADA**

---

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION. .......................................................................................... 1

II.     RELEVANT FACTUAL BACKGROUND. ................................................... 3

        A.      None of the Parties Have Jurisdictionally Significant Contacts with the
                State of Colorado. ............................................................................. 3

                1.      Sharktech Provides Secure Hosting and Related Services From Its
                        Nevada Headquarters. ............................................................. 3

                2.      Background on the Nature of IP Addresses and VPNs. .......................... 3

                3.      Given the Nature of Sharktech's Services to VPN Providers,
                        Sharktech Cannot Take Affirmative Action in Colorado or
                        Elsewhere to Prevent or Mitigate Infringing Activity After
                        Receiving Claims of Third-Party Infringement. ....................................... 6

                4.      Sharktech's Sole Contacts with the State of Colorado Consist of
                        Storing Its Equipment in Colorado. ........................................................ 7

                5.      Mr. Timrawi is a Longtime Nevada Resident with No Individual
                        Ties to the State of Colorado. ................................................................. 8

                6.      Plaintiffs are Nevada Entities with Principal Places of Business in
                        Nevada. .................................................................................................. 9

        B.      Plaintiffs Cannot Establish that Defendants Engaged in Intentional
                Conduct Aimed at the State of Colorado. ................................................. 9

                1.      Plaintiffs' Allegations Relate Almost Exclusively to Third-Party
                        Conduct. ................................................................................................. 9

                2.      Plaintiffs Have Not Pled and Cannot Plead Intentional Conduct by
                        Sharktech. .............................................................................................. 10

III.    LEGAL STANDARD FOR PERSONAL JURISDICTION. ......................................... 11

        A.      Plaintiffs Bear the Burden of Proof. ....................................................... 11

        B.      Due Process Inquiry. ............................................................................... 11

IV.     PLAINTIFFS' COMPLAINT MUST BE DISMISSED FOR LACK OF
        PERSONAL JURISDICTION. ..................................................................... 13

        A.      Dismissal is Necessary Because Defendants are Not Subject to General
                Jurisdiction in this District. .................................................................... 13

        B.      Dismissal is Necessary Because Defendants are Not Subject to Specific
                Jurisdiction in this District. .................................................................... 15

                1.      Purposeful Direction Standard. .............................................................. 15

                2.      The Tenth Circuit's 2020 XMission Decision. ....................................... 16

**TABLE OF CONTENTS**
(continued)

**Page**

      3.    Under Walden and XMission, Defendants are Not Subject to Specific Jurisdiction in Colorado. ............................................................. 17

    C.    The Assertion of Jurisdiction Would Offend Notions of Fair Play and Substantial Justice. ................................................................................. 18

V.    PLAINTIFFS' COMPLAINT MUST BE DISMISSED FOR IMPROPER VENUE. ................................................................................................................. 19

VI.    ALTERNATIVELY, THE COURT SHOULD TRANSFER VENUE TO THE DISTRICT OF NEVADA. ................................................................................... 20

VII.    CONCLUSION. ................................................................................................ 22

Defendants Sharktech, Inc. ("Sharktech") and Tim Mouhieddine Timrawi (together with Sharktech, "Defendants"), through undersigned counsel, move to dismiss Plaintiffs' Complaint and Jury Demand ("Complaint") (ECF #1) pursuant to Federal Rule of Civil Procedure 12(b)(2), 28 U.S.C. § 1391(b) and 28 U,S.C. § 1404(a).

## I.     Introduction.

This is a frivolous copyright infringement lawsuit against Sharktech—an internet infrastructure service ("IaaS") provider—and its principal, filed in an improper venue where personal jurisdiction is lacking.  Plaintiffs are Nevada entities who claim that third parties with no relationship to Sharktech have violated their purported copyrights by engaging in activity that has no relationship with Sharktech other than the fact that its mass-market, neutral-purpose Internet infrastructure was, incidentally, one small piece of the overall transit path of data on the Internet.

There would be nothing unusual about a copyright infringement lawsuit against the individual end-user infringers, who are alleged to have used "torrent" websites to pirate movies. Indeed, Plaintiffs are able to and have allegedly already discovered some of their identities and have brought suits against both end-user infringers and piracy websites in the past.  But Plaintiffs did not bring this lawsuit against the individual end-user infringers in the jurisdictions where they reside. Nor did they accuse the torrent websites that allegedly facilitate the infringement in the jurisdictions where they reside.  Nor did they even sue Sharktech's customers identified in the Complaint, the three virtual private network ("VPN") or one IaaS provider alleged to have been used by the end-user infringers under a direct supplier-customer relationship.

Instead, in an apparent attempt to dramatically expand their range of potential remedy sources, Plaintiffs have singled out Sharktech, a company headquartered in Nevada, for the stated

reason that Sharktech provides IP addresses and infrastructure services to other businesses as a commercial service, a small percentage of which are the VPN providers that are the focus of the Complaint (although not sued by Plaintiff).  End-user customers use mass-market VPNs to protect data, user identification and user location for many legitimate and necessary business purposes, and they are also one of the only ways that people residing under autocratic censorship regimes can exercise freedom of speech and assembly and gain access to the full range of information on the internet.

Once an IP address is licensed to a customer such as a VPN provider, the use of that IP address is solely in the control of the Sharktech's customer, *not Sharktech*.  The VPN provider then automatically reassigns and distributes its IP addresses among its own customer base, and the actual user of each IP address can change frequently and rapidly over time.  Not only does Sharktech have no privity of contract with its customers' customers, but Sharktech also has no control over their conduct and how they use the IP address assigned to them by the VPN provider. Further, mass market VPN services are not designed to store or host data whatsoever, and like the name suggests (Virtual Private Network) are themselves a service that merely acts as a transient conduit for activity directed by their end users—the alleged direct infringers being a tiny fraction thereof.

Not only have Plaintiffs filed this suit against Sharktech despite no alleged volitional conduct by Sharktech related to alleged third-party infringement, Plaintiffs sued in Colorado despite the fact that Plaintiffs are Nevada entities and Defendants are headquartered in Nevada, where all relevant operational records and decisions—electronic or otherwise—reside and take place. Plaintiffs' complaint against Defendants for contributory and vicarious copyright

infringement must be dismissed on both procedural and substantive grounds.[1]   Through this motion, Defendants seek dismissal of Plaintiffs' claims for lack of personal jurisdiction and improper venue.  Alternatively, Defendants ask the Court to transfer this action to the District of Nevada where all parties reside and where all of Defendants business records are located.

## II.   Relevant Factual Background.

### A. None of the Parties Have Jurisdictionally Significant Contacts with the State of Colorado.

#### 1.   *Sharktech Provides Secure Hosting and Related Services From Its Nevada Headquarters.*

Sharktech develops, operates, manages and supports internet infrastructure services from its headquarters and principal place of business in Las Vegas, Nevada.  Timrawi Decl. ¶ 1. Sharktech's management team and key employees are located in Last Vegas, Nevada.  Timrawi Decl. ¶ 1.  Sharktech directs the conduct of all of its employees and independent contractors exclusively from its Las Vegas headquarters.  Timrawi Decl. ¶ 1.   All of Sharktech's decisions, including those at issue in the Complaint, are made from its headquarters in Las Vegas, Nevada. Timrawi Decl. ¶ 1.  Sharktech's agreements with its customers are governed by Nevada law and specify that venue shall be in Clark County, Nevada (where Las Vegas is situated).  Timrawi Decl. ¶ 1.

#### 2.   *Background on the Nature of IP Addresses and VPNs.*

Plaintiffs' specious allegations regarding Defendants and their alleged connection to Colorado must be understood in context.  The Complaint focuses heavily on Sharktech's provision

---

[1] Defendants are concurrently filing a Motion to Dismiss for Failure to State a Claim.

of IP addresses and infrastructure to VPN providers.  These VPN providers operate their own independent businesses worldwide and use Sharktech as a general-purpose infrastructure provider, for activities completely outside of Sharktech's visibility and control.

An IP address is a numerical "address" that identifies each device or server connected to a computer network. *See*, *e.g.*, *United States v. Yu*, 411 F. App'x 559, 560 (4th Cir. 2010) ("Each computer connected to the Internet is assigned a unique numerical address, otherwise known as an Internet protocol or IP address, to identify itself and facilitate the orderly flow of electronic traffic."). Thus, IP addresses permit devices to be identified and interface on the Internet, and permit different endpoints to communicate with one another—by definition, they do not host, store or transmit information.

A VPN encrypts and secures data for all forms of internet traffic. *See Perfect 10, Inc. v. Giganews, Inc.* No. CV-11-07098-AB (SHx), 2014 WL 8628034, *2 (C.D. Cal. Nov. 14, 2014). As one example of their use, businesses and professionals commonly purchase and use VPNs to protect confidential information when their accessing the internet in public places or foreign countries or to enable connectivity to their business systems from behind a censorship firewall. *See*, *e.g.*, COVID-19 Vaccine Information for U.S. Citizens Abroad, U.S. Department of State (July 9, 2021) ("[P]lease visit Vaccines.gov utilizing a Virtual Private Network (VPN)."),[2] "Travel Tips", Georgetown University, University Information Security Office ("UISO recommends securing your electronic devices and accessing GU via VPN.").[3]

A VPN can also act as a proxy, supplying a new IP address to a given end user, which

---

[2] Available at https://travel.state.gov/content/travel/en/traveladvisories/vaccine-info-for-us-citizens-abroad.html.
[3] Available at https://security.georgetown.edu/awareness/secure-travel-tips/.

allows people living in authoritarian censorship states to freely access information and exercise civil rights online. *See* "Why Hong Kong is worried about its digital freedom", Financial Times (June 2, 2020) ("Hong Kongers' interest in commercial VPN subscriptions surged. . . .  They were looking for a way to encrypt and thus protect their internet traffic from government surveillance, as well as to get it out of Hong Kong in case the Great Firewall is extended.").[4]  VPNs also allow End Users to maintain online privacy and protect against having their search history tracked, gathered, viewed or sold. *Id.*

Because all information transmitted via a VPN is typically encrypted, even VPN service providers lack visibility into or the ability to know the content of information packets transmitted via VPN.  *Id.*  VPNs are also conduits and do not host or store information of their users; instead, they can be thought of as one stop in a multi-stop journey for any given piece of data traversing the internet.  *See*, *e.g.*, "What is a VPN", U.S. News (March 31, 2021) (analogizing VPNs to a "secure tunnel" and also highlighting ExpressVPN, a Sharktech customer referenced in the Complaint, as U.S. News' "Best VPN of 2021").[5]

Despite the Complaint's heavy focus on particular IP addresses that were purportedly used for direct infringement, each VPN provider typically has many IP addresses pooled, and whether one is assigned by the VPN provider to a particular end user versus another (or whether one was originally supplied by Sharktech or some other provider) has no bearing on the activities or outcomes of the VPN service's use.  *See id.* (noting that each VPN provider has upward of thousands of IP addresses).  The same IP address could one minute be used by a business traveler

---

[4] Available at https://www.ft.com/content/fb864440-89e9-4244-a750-aaf48bc9f3e3.
[5] Available at https://www.usnews.com/360-reviews/vpn/what-is-a-vpn.

trying to protect confidential information at a public hotspot, and another minute be used by someone in the course of downloading pirated files. *Id.* But it is not the IP address itself nor the VPN provider that in any way directs, controls or supervises how these services are used—that is up to the end user. *Id.*

### 3. *Given the Nature of Sharktech's Services to VPN Providers, Sharktech Cannot Take Affirmative Action in Colorado or Elsewhere to Prevent or Mitigate Infringing Activity After Receiving Claims of Third-Party Infringement.*

When Sharktech receives Digital Millennium Copyright Act notifications ("Third-Party Infringement Claims") relating to VPNs, there is nothing that Sharktech can do using its systems to verify whether the allegations in such Third-Party Infringement Claims are accurate. Timrawi Decl. ¶ 2. Sharktech simply does not operate or control the infrastructure that it provides to its customers—the customers do. Timrawi Decl. ¶ 2. Thus, Sharktech cannot take affirmative acts in Colorado or elsewhere that would prevent or mitigate alleged copyright infringement. Moreover, as explained above, because VPNs are designed like conduits and do not host or store the accused data in the first place, such VPNs will also not retain data sufficient to verify whether Third-Party Infringement Claims have any truth.

As the Complaint implicitly acknowledges, the only affirmative action Sharktech is capable of taking to stop alleged infringement by a VPN provider's customers (or end users even further downstream from Sharktech) through traffic transiting through Sharktech's networks would be to proactively terminate all of its existing contracts with VPN providers and then refuse to accept any VPN providers as customers.[6] Compl. ¶¶ 130-32; Timrawi Decl. ¶ 2. This extreme

---

[6] Sharktech does not and need not address issues related to its defenses under the Digital Millennium Copyright Act, which are not directly relevant to this motion.

demand would not only disrupt a vital Internet service, but it would also do nothing to prevent the purported injuries that Plaintiffs allege.  Worse, it would invite countless inevitable copyright claims.  Even if every VPN provider were taken down in the United States—an extremely harmful and disproportionate remedy in its own right—the same traffic could be routed via VPN providers in other countries or simply without the use of VPNs at all, and no different outcome would result for Plaintiffs.

      **4.**   *Sharktech's Sole Contacts with the State of Colorado Consist of Storing Its Equipment in Colorado.*

Sharktech does not have a systematic and continuous relationship with the State of Colorado.  It has no employees located in Colorado, has never recruited employees in Colorado, has never been registered to do business in Colorado, owned or operated any offices in Colorado, employed any persons in Colorado, maintained any bank accounts in Colorado, or had any telephone listings in Colorado.  Timrawi Decl. ¶ 3.  Sharktech does not directly market its services to Colorado residents and promotes and advertises its services on a nationwide basis.  Timrawi Decl. ¶ 3.  Only a handful of Sharktech's customers (2.5%) are located in Colorado, comprising only approximately 2.2% of Sharktech's total revenue.  Timrawi Decl. ¶ 3.

Sharktech's only connection to Colorado is that certain of its servers and related equipment are stored at H5 Data Centers' ("H5") Denver data center ("Data Center"), where they are serviced by another company called Handy Networks ("Handy").  Timrawi Decl. ¶ 4.  Both H5 and Handy are third-party businesses and independent contractors of Sharktech, as explained in the arms-length agreements governing their provision of services.  **Ex. A**, H5 agreement, Sections 1.12, 9.8; **Ex. B**, Handy agreement, Sections 28, 25.  Sharktech negotiated and executed these agreements from its Nevada headquarters, and to the extent Sharktech interacts with H5 and Handy for routine

matters, it also does so from its Nevada headquarters.  Timrawi Decl. ¶ 4.  As Plaintiffs seem to be aware by reviewing Sharktech's website, the Data Center is the property of H5, not Sharktech. Compl. ¶ 5; Timrawi Decl. ¶ 5.

The Data Center merely houses Sharktech's equipment.  Timrawi Decl. ¶ 5.  Due to the transient nature of VPN services, which act as a conduit rather than storage, it is highly unlikely that any relevant evidence would be stored on Sharktech's Data Center equipment in the ordinary course of business.  Timrawi Decl. ¶ 5.  Even if there were cause to inspect the content of Sharktech's equipment, any relevant access, logging and other operating information relevant to the claims would normally originate and be accessible to Sharktech in Las Vegas, Nevada, where all of its services are centrally managed.  Timrawi Decl. ¶ 5.

### 5. *Mr. Timrawi[7] is a Longtime Nevada Resident with No Individual Ties to the State of Colorado.*

Mr. Timrawi is an officer of Sharktech with ownership interests in the company who has resided in Nevada since 2013.  Timrawi Decl. ¶¶ 1, 6.  Mr. Timrawi has never lived in Colorado, does not own property in Colorado, does not personally do business in the Colorado, and has never had a Colorado phone number.  Timrawi Decl. ¶ 6.  Mr. Timrawi travelled to Colorado for personal purposes one time in 2013 to visit family.  Timrawi Decl. ¶ 6.  He visited Colorado a handful of times on behalf of Sharktech when it first decided to store equipment there and then to ensure its equipment was being properly stored and serviced.  Timrawi Decl. ¶ 6.  Mr. Timrawi has not travelled to Colorado since at least 2019, long before Plaintiffs contacted Sharktech regarding the

---

[7]     As explained in Defendants' concurrently filed Motion to Dismiss for Failure to State a Claim, Mr. Timrawi has been wrongly named as an alleged alter ego of Sharktech.  No facts are pled and none exist that would support such a finding.

alleged third-party infringement.  Timrawi Decl. ¶ 6.

### 6. *Plaintiffs are Nevada Entities with Principal Places of Business in Nevada.*

Plaintiffs appear to have no connection to the State of Colorado.  Plaintiffs are all "corporation[s] organized under the laws of the State of Nevada, [and have] a principal office in Nevada."  Compl. ¶ 8.  Plaintiffs also claim to be "affiliate[s] of Millennium Media, a production company and distributor of a notable catalogue of major motion pictures."  Compl. ¶ 8.  According to its website, Millennium Media's global headquarters is located in Los Angeles, California, which is less than an hour by plane from Las Vegas.  **Ex. C**.  Nevada Secretary of State records for each Plaintiff demonstrate that their officers are all located in Las Vegas, Nevada, except for Plaintiffs Eve Nevada, LLC, and Voltage Holdings, LLC, whose managers or members are located in Los Angeles, California.  **Ex. D**.  Plaintiffs' counsel is located in Hawaii.  Compl. signature page, p. 32.  Plaintiffs' other identified witnesses are located outside of the United States (Compl., Ex. 3 (declaration of Techmodo Limited signed by witness located in England), Ex. 4 (email from individual located in Cyprus), Affidavit of Daniel Arheidt (testimony from alleged witness in Germany)).   Plaintiffs do not allege any relationship with the State of Colorado.  *See generally* Compl.

### B. <u>Plaintiffs Cannot Establish that Defendants Engaged in Intentional Conduct Aimed at the State of Colorado.</u>

#### 1. *Plaintiffs' Allegations Relate Almost Exclusively to Third-Party Conduct.*

Plaintiffs' Complaint is filled with allegations of third-party conduct.  Plaintiffs generally allege that individual end users have used torrent sites to infringe their copyrighted works (*e.g.* Compl. ¶¶ 48-76), that the end users are customers of Sharktech's customers that are VPN providers (*e.g.* Compl. ¶¶ 43-45), and that the end users accomplish their infringement through

accounts with the VPN providers who happened to route those users through IP addresses associated with Sharktech's Denver data center. *See* Compl. ¶¶ 60-67.  In addition to allegations regarding the end users' conduct, the  Complaint is replete with allegations regarding the conduct of "Defendants' subscribers," sometimes also referred to as Sharktech's "VPN customers." Compl. ¶¶ 70-74, 81, 88-115.

### 2. *Plaintiffs Have Not Pled and Cannot Plead Intentional Conduct by Sharktech.*

Although Plaintiffs use clever language to insinuate that Sharktech has a role in the end users' alleged infringement, Plaintiffs allege no underlying conduct with respect to the infringement by Sharktech directed to Colorado.  Compl. ¶¶ 116-148.  At most, Plaintiffs allege that Sharktech had licensed IP addresses to Sharktech customers that are VPN providers, and that those same IP addresses were associated with Sharktech's equipment stored at the Data Center.

Plaintiffs' remaining allegations do not amount to intentional conduct by Sharktech directed to Colorado, and instead focus on Plaintiffs' conduct or third-party conduct.  Plaintiffs claim that they sent Sharktech Third-Party Infringement Claims, none of which were sent or received in Colorado.  Compl. ¶¶ 116-124, 133-143; Compl. Ex. 4, demonstrating Third-Party Infringement Claims were sent from the country of Cyprus; Timrawi Decl. ¶ 1, stating Sharktech's relevant conduct took place in Las Vegas, Nevada.  Sharktech lacks the ability to verify or otherwise obtain actual knowledge of past acts of infringement on a third-party transient networking service such as a VPN.  Timrawi Decl. ¶ 2.  But in any event, any alleged acts or omissions by Sharktech relating to Third-Party Infringement Claims would have taken place in Las Vegas, Nevada, and evidence of such matters, if any, would be located in and accessible from Las Vegas, Nevada.   Timrawi Decl. ¶ 1.

Plaintiffs claim that Sharktech "controls" the conduct of its customers merely because Sharktech has the ability to terminate its contracts with VPN providers. Compl. ¶¶ 130-132. Even if such alleged control were relevant or plausible for purposes of secondary copyright liability (it is neither),[8] all of Sharktech's operational decisions (including decisions regarding customer accounts) are made from Sharktech's headquarters in Nevada. Timrawi Decl. ¶ 1. Any customer management systems or records relevant to any purported "control" over its customers would also be located in Nevada. Timrawi Decl. ¶ 1. Sharktech manages its website and content thereon from its headquarters in Nevada. Timrawi Decl. ¶ 1. Plaintiffs allege no other facts regarding Sharktech's intentional conduct.

## III.   Legal Standard for Personal Jurisdiction.

### A.   Plaintiffs Bear the Burden of Proof.

The plaintiff has the burden of establishing personal jurisdiction. *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839 (10th Cir. 2020). If the court determines jurisdiction on affidavits and other written material and does not conduct an evidentiary hearing, the plaintiff must make a *prima facie* showing that jurisdiction exists. *Id.* When evaluating personal jurisdiction under the due process clause, the Court only "accept[s] as true the well-pleaded ('that is, plausible, non-conclusory, and non-speculative') facts alleged in the complaint" that are not "controverted by sworn statements." *Id.* at 836 (citing *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008); *Shrader v. Biddinger*, 633 F.3d 1235, 1248 (10th Cir. 2011)).

### B.   Due Process Inquiry.

Because the Copyright Act does not provide for nationwide service of process, this Court's

---

[8]   It is not. *See* Defendants' concurrently filed Motion to Dismiss for Failure to State a Claim.

due process analysis turns on whether jurisdiction comports with constitutional due process demands. *Dudnikov*, 514 F.3d at 1070. "The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283, 134 S. Ct. 1115, 188 L. Ed.2d 12 (2014). For a court "to exercise jurisdiction in harmony with due process, defendants must have 'minimum contacts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'" *Dudnikov*, 514 F.3d at 1070 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). That is, the contacts with the forum State must be such that the defendant "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). Personal jurisdiction can be acquired through either general jurisdiction or specific jurisdiction. *See Shrader*, 633 F.3d at 1239. A person is subject to general jurisdiction within a State only if its contacts with the State are so "continuous and systematic" that the person is essentially at home in the State. *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017).

Specific jurisdiction, by contrast, allows a court to exercise jurisdiction over an out-of-state defendant only for claims related to the defendant's contacts with the forum State. *Id.* Specific jurisdiction is proper if: (1) the out-of-state defendant "purposefully directed" its activities at residents of the forum State, and (2) the plaintiff's alleged injuries "arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 2182, 85 L. Ed. 2d 528 (1985) (internal quotation marks omitted). The "arising-out-of" component of the test requires courts to ensure that there is an adequate link between the forum State and the claims at

issue, regardless of the extent of a defendant's other activities connected to the forum. *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, S.F. Cty., 137 S. Ct. 1773, 1781, 198 L. Ed. 2d 395 (2017). Even if the plaintiff otherwise satisfies these requirements, the defendant can defeat jurisdiction by presenting a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477, 105 S. Ct. at 2185.

**IV.   Plaintiffs' Complaint Must be Dismissed for Lack of Personal Jurisdiction.**

**A.   Dismissal is Necessary Because Defendants are Not Subject to General Jurisdiction in this District.**

"[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler AG v. Bauman*, 571 U.S. 117, 137, 134 S. Ct. 746, 760, 187 L. Ed. 2d 624 (2014). "'For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.'" *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924, 131 S. Ct. 2846, 2853–54, 180 L. Ed. 2d 796 (2011)). "Those affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable." *Daimler*, 571 U.S. at 137. In *Daimler*, the Court rejected the plaintiff's theory that the activities of a company's subsidiary alleged to be the company's agent were sufficient to confer general jurisdiction, also noting that even when a company "operates in many places," the company "can scarcely be deemed at home in all of them." *Id.* at n.12.

Even before *Daimler*, courts were clear that the bar for general jurisdiction is quite high. "'[E]ngaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders.'" *Shrader*, 633 F.3d at 1243 (quoting *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th

13

Cir.2000)).  "Simply because a defendant has a contractual relationship and business dealings with a person or entity in the forum state does not subject him to general jurisdiction there." *Shrader*, 633 F.3d at 1246–47.  Additionally, "[S]poradic or isolated visits to the forum state will not subject the defendant to general jurisdiction."  *Id.* at 1247.  Even renting or owning property located in a forum is not enough to confer general jurisdiction.  *Shaffer v. Heitner*, 433 U.S. 186, 212, 97 S. Ct. 2569, 2584 (1977).  Consequently, a defendant's server location within the forum cannot constitute a basis for the exercise of general jurisdiction.  *See Pfister v. Selling Source, LLC*, 931 F. Supp. 2d 1109, 1116 (D. Nev. 2013) (Finding defendant's "server location [in the forum] do[es] not establish the continuous and systematic contacts required for this court to exercise personal jurisdiction over it.").[9]  Server location simply does not bear on whether a corporation is "at home" as required under *Daimler*. 571 U.S. at 137.

There is no basis to subject Defendants to general jurisdiction in Colorado.  Sharktech is at home at its headquarters in Nevada and not in Colorado, as is further evident from its lack of systematic contacts with Colorado—no offices, telephone numbers, direct advertising, etc.

---

[9] A number of jurisdictions have made clear that server location is not enough to confer personal jurisdiction.  *Chang v. Virgin Mobile*, No. 3:07-CV-1767-D, 2009 WL 111570, at *3 (N.D.Tex. Jan.16, 2009) (holding plaintiffs "cannot rely on the fortuitous location of . . . servers to establish personal jurisdiction"); *Man-D-Tec, Inc. v. Nylube Prod. Co., LLC*, No. CV-11-1573-PHX-GMS, 2012 WL 1831521, at *2 (D. Ariz. May 18, 2012) ("If the mere location of a server could create personal jurisdiction, any state where a server is located would have personal jurisdiction over any user of that server."); *Sia v. AirAsia Berhad*, No. C16-1692-TSZ, 2017 WL 1408172, at *3 n.4 (W.D. Wash. Apr. 20, 2017) ("District courts in this circuit . . . have squarely rejected the argument that server location within the forum can constitute a basis for the exercise of general jurisdiction."); *Hemisphere Mgmt., LLC v. ComputerEase Software, Inc.*, No. 2:06CV337DAK, 2006 WL 3457212, at *3 (D. Utah Nov. 16, 2006) (finding defendant's ownership of servers in the forum, in conjunction with lack of other significant relevant contacts, insufficient to justify the exercise of general personal jurisdiction).

Sharktech's handful of Colorado customers (16 customers, or 2.5% of Sharktech's total customer base) are insufficient.  *E.g. Shrader*, 633 F.3d at 1243 (citing cases finding, for example, thirty-five customers in forum insufficient and finding thousands of domain-name registrations analogized to sales in forum insufficient).  So are the two arms-length agreements with third-party vendors H5 and Handy under which those companies maintain and service Sharktech's equipment in facilities in which Sharktech has no real property interests.  *Id.* at 1246-47.  The same is true for Mr. Timrawi, who is inappropriately named as a defendant in this action to begin with.  For example, Mr. Timrawi does not regularly travel to Colorado, does not own property in Colorado, conducts no personal business in Colorado and has only sporadically traveled to Colorado.  In sum, Defendants are not essentially at home in Colorado.

**B.** **Dismissal is Necessary Because Defendants are Not Subject to Specific Jurisdiction in this District.**

1. ***Purposeful Direction Standard.***

"Purposeful direction" in the tort context "has three elements: (1) an intentional action; (2) expressly aimed at the forum state; and (3) with knowledge that the brunt of the injury would be felt in the forum state."  *Dental Dynamics, LLC v. Jolly Dental Grp.*, LLC, 946 F.3d 1223, 1231 (10th Cir. 2020).

In *Walden*, the Supreme Court re-articulated the criteria for establishing specific jurisdiction: "[t]he inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'"  571 U.S. at 283-84, 134 at 1121 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984)).  The "defendant's suit-related conduct must create a substantial connection with the forum state," and "the relationship must arise out of

contacts that the 'defendant *himself*' creates with the forum State" ... with the "minimum contacts analysis look[ing] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 284-85 (citing *Burger King*, 471 U.S. at 475 and *Int'l Shoe Co.*, 326 U.S. at 319) (emphasis in original).

"In all events, the shared aim of 'purposeful direction' doctrine has been said by the Supreme Court to ensure that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Dudnikov*, 514 F.3d at 1071 (quoting *Burger King*, 471 U.S. at 475); *Far W. Cap., Inc. v. Towne*, 46 F.3d 1071, 1080 (10th Cir. 1995) (concluding "there is no indication that [the forum] had anything but a fortuitous role" in the commission of the alleged tort).

### 2.  *The Tenth Circuit's 2020 XMission Decision.*

In *XMission*, the Tenth Circuit rejected the assertion of specific personal jurisdiction over a foreign company by a forum-based plaintiff whose "servers and other hardware that it own[ed] and operate[d]" in the forum were allegedly used to transmit thousands of spam emails to forum residents in violation of the CAN-SPAM Act. *XMission*, 955 F.3d at 837.  The defendant digital marketing company's business model was based on supplying consumer data to its customers.  *Id.* The defendant had "no involvement with or control over the origination, approval, or delivery of the emails."  *Id.* at 838.

Among other things, the Tenth Circuit determined that the plaintiff failed to establish jurisdiction because the defendant had no control over the allegedly offending conduct.  *Id.* at 846 (focusing on the fact that the defendant "does not see the emails before they are sent by the publishers; know where (i.e., the location or the recipient) the publishers send the emails; or decide

16

the customers to whom the publishers should publish the emails").  The court also rejected plaintiff's argument that jurisdiction could be based on the conduct of defendant's customers, because under *Walden* personal jurisdiction cannot "be based merely on contacts with the State by third persons whose activities are in some way intertwined with those of the defendant."  *Id.* at 847.

> **3.** ***Under Walden and XMission, Defendants are Not Subject to Specific Jurisdiction in Colorado.***

Like the defendants in *Walden* and *XMission*, Defendants have not committed intentional acts expressly aimed at the forum with knowledge that the brunt of any injury would be felt here. Rather, Plaintiffs' injuries are entirely the result of acts by third-party individual alleged infringers with whom Sharktech has no relationship and no ability to monitor or control.

Plaintiffs' theory of jurisdiction rests entirely on the fact that Sharktech has done business with VPN providers by licensing them IP addresses associated with equipment at the Data Center. But the "arising out of" requirement is "not satisfied when a plaintiff 'would have suffered the same injury even if none of the defendant's forum contacts had taken place.'" *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456–57 (10th Cir. 1996) (quoting *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 271–72 (9th Cir. 1995)).  Even if Sharktech did not have any equipment available in Colorado, the accused direct infringers could have conducted the same torrenting activity with or without VPN services.  For example, use of a VPN provider in, or with equipment in, another state in combination with torrenting would have caused the same exact result.  The simple fact that an accused infringer happened to use an IP address assigned by ARIN to Sharktech does not amount to an intentional act expressly aimed at the State of Colorado relating to Plaintiffs' – all located in Nevada or California – purported injuries.

**C. The Assertion of Jurisdiction Would Offend Notions of Fair Play and Substantial Justice.**

A determination of whether the exercise of jurisdiction is so unreasonable as to violate fair play and substantial justice is assessed by considering:

> (1) the burden on the defendant, (2) the forum State's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.

*Old Republic*, 877 F.3d at 909 (internal quotation marks omitted).

Analysis of all relevant factors demonstrates that the exercise of jurisdiction over Defendants in Colorado would be unreasonable. Defendants should not bear the burden of traveling from Nevada to Colorado to defend a lawsuit by Nevada companies, particularly given that Colorado has no interest in this dispute. All the parties and all of Sharktech's relevant evidence is located in Nevada, where Plaintiffs' evidence is also presumably located given they allege they are headquartered in Nevada. Irrespective of which jurisdiction's law will apply, the state interest factor favors Defendants because ***none*** of the parties are Colorado residents. *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1162–63 (10th Cir. 2010). This suit also has no impact on Colorado residents. Any harm caused by the alleged end-user infringement was felt by Plaintiffs in Nevada, not where the data happened to pass through Colorado. There is also no reason to believe that this case would be more efficiently resolved in Colorado than in Nevada.[10] Defendants

---

[10] Notably, the court congestion factor is neutral, as the statistics in the District of Nevada and District of Colorado are comparable overall. Administrative Office of the U.S. Federal Courts, Federal Court Management Statistics available at https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2020/12/31-3 and https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2021/03/31-3. The District of Colorado has a slightly higher overall volume of cases but is less congested than

should not be forced to litigate this matter in Colorado.

## V.   Plaintiffs' Complaint Must be Dismissed for Improper Venue.

Pursuant to 28 U.S.C. § 1391(b), a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are
> residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving
> rise to the claim occurred, or a substantial part of property that is the subject of
> the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided
> in this section, any judicial district in which any defendant is subject to the
> court's personal jurisdiction with respect to such action.

Likewise, copyright infringement actions may be brought "in the district in which the defendant

or his agent resides or may be found." 28 U.S.C. § 1400(a). "'Once venue is challenged, it is the

plaintiff's burden to show that venue is proper in the forum district.'" *Scott v. Buckner Co.*, 388 F.

Supp. 3d. 1320, 1324 (D. Colo. 2019) (quoting *Hanson v. Bosley & Bratch, Inc.*, 2018 WL

4491424, at *3 (D. Colo. Sept. 18, 2018)).

The venue analysis in this matter turns on whether a substantial part of the events or

omissions giving rise to the claim occurred in Colorado.[11]   As discussed above, the only act or

---

the District of Nevada as measured by median time in months from case filing to disposition and
number of pending cases per judge. However, Nevada is less congested as measured by median
time in months from filing to trial in civil cases and the average weighted filings per judge. *See,
e.g.*, *Cahey v. Int'l Bus. Machines Corp.*, No. 20-CV-00781-NYW, 2020 WL 5203787, at *6 (D.
Colo. Sept. 1, 2020); *see also Emps. Mut. Cas. Co.*, 618 F.3d at 1169 ("When evaluating the
administrative difficulties of court congestion, the most relevant statistics are the median time from
filing to disposition, median time from filing to trial, pending cases per judge, and average
weighted filings per judge.").

[11] As demonstrated above, Defendants are not subject to personal jurisdiction in Colorado and have
no agents in Colorado. There can be no dispute that all parties are Nevada residents or that this
action could have been brought in the District of Nevada. Additionally, Plaintiffs alleged personal
property (copyrights) that are subject to this action have no physical situs but if it was situated
somewhere, that would be where Plaintiffs reside in Nevada.

omission Plaintiffs assert by Sharktech is its decision to do business with VPN providers. Sharktech's business decisions about the parties with whom it does business are made by Sharktech in Nevada.  Even if infringing material was at some point routed through Sharktech's servers in Colorado by unknown third parties, the transmission of infringing material was no more connected to Colorado than it was to the next state through which the information passed. Colorado is not a state in which a substantial part of events or omissions allegedly occurred.

**VI.      Alternatively, the Court Should Transfer Venue to the District of Nevada.**

Section 1404(a) of Title 28 provides, in pertinent part, that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 2244, 101 L. Ed. 2d 22 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S. Ct. 805, 812, 11 L. Ed. 2d 945 (1964)). To warrant a transfer, the moving party must establish that: (1) the action could have been brought in the alternate forum; (2) the existing forum is inconvenient; and (3) the interests of justice are better served in the alternate forum. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir.1991).

With regard to convenience and the interests of justice, courts consider the following private and public interest factors:

> [P]laintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage

20

> of having a local court determine questions of local law; and, all other
> considerations of a practical nature that make a trial easy, expeditious and
> economical.

*Id.* at 1516 (quoting *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir.1967)).

These considerations strongly favor weigh in favor of transferring this case to the District of Nevada.  This case could have been brought in the District of Nevada, where all the parties reside and the assertion of personal jurisdiction over Defendants is proper.  The relevant convenience issues and interests of justice also favor transfer.  All the parties are located in Nevada (where Plaintiffs' principal offices are also located), all of Defendants' relevant records are located in Nevada, Sharktech's witnesses are located in Nevada where its decisions are made (also where any judgment against Defendants would be enforceable), and Plaintiffs' witnesses (managers and members) are primarily located in Nevada or outside the United States (equally convenient to Colorado and Nevada).  *Denver & Rio Grande W. Ry. Co. v. Brotherhood of R.R. Trainmen*, 387 U.S. 556, 560, 87 S. Ct. 1746, 1748, 18 L. Ed. 2d 954 (1967) ("[V]enue is primarily a matter of convenience of litigants and witnesses").  Notably, although a Plaintiff's choice of forum is afforded some deference, it receives less deference if the plaintiff does not reside in the district. *Four Corners Nephrology Assocs., P.C. v. Mercy Med. Ctr. of Durango,* 464 F.Supp.2d 1095, 1098 (D.Colo.2006); *see also PLX Tech., Inc. v. Knuettel,* No. 11-CV-03256-DME-KMT, 2012 WL 1813291, at *2 (D. Colo. May 17, 2012) (affording less weight to the plaintiff's chosen forum because the plaintiff did not maintain its principal place of business in Colorado).  Courts also accord little weight to a plaintiff's choice of forum where, as here (as explained above) "the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum."  *Cook v. Atchison, Topeka & Santa Fe Ry. Co.,* 816 F. Supp. 667, 669 (D. Kan.

1993).

Defendants ask the Court to transfer this matter to the District of Nevada, because all of the relevant transfer factors weigh in favor of transfer.

## VII.   Conclusion.

For the foregoing reasons, Defendants respectfully requests that the Court dismiss Plaintiffs' Complaint for lack of personal jurisdiction and improper venue.   Alternatively, Defendants ask the Court to transfer this matter to the District of Nevada.


Respectfully submitted this 12th day of July, 2021.


<div style="margin-left:40%">

*s/Airina L. Rodrigues*

Airina L. Rodrigues
Andrea M. LaFrance, #50222
BROWNSTEIN HYATT FARBER SCHREK, LLP
410 Seventeenth Street, Suite 2200
Denver, CO   80202-4432
Telephone:   303-223-1100
Fax:   303-223-1111
Email: arodrigues@bhfs.com
    alafrance@bhfs.com

*Attorneys for Defendants*

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of July, 2021, I electronically filed the foregoing **DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE; ALTERNATIVELY, FOR TRANSFER TO THE DISTRICT OF NEVADA** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel:

Kerry Steven Culpepper
Joshua J. Lee
CULPEPPER IP, LLLC
75-170 Hualalai Road
Suite B204
Kailua Kona, HI 96740
Telephone: 808-464-4047
Fax: 202-204-5181
Email: kculpepper@culpepperip.com
         joshua.lee@culpepperip.com

*Attorneys for Plaintiffs*


                                          *s/Kate M. Meade*
                                          Kate M. Meade, Paralegal
                                          BROWNSTEIN HYATT FARBER SCHRECK, LLP
                                          410 17th Street, Suite 2200
                                          Denver, CO 80202
                                          *phone*: 303-223-1100; *fax*: 303-223-1111