**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. <u>1:20-cv-1261-SKC</u>

MILLENNIUM FUNDING, INC., *et al.*,

      Plaintiffs,

v.

SHARKTECH, INC., *et al.*,

      Defendants.

---

**PLAINTIFFS' OPPOSITION TO DEFENDANT SHARKTECH'S MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE
(AUTHORITY INCORPORATED)**

---

Plaintiffs MILLENNIUM FUNDING, INC., VOLTAGE HOLDINGS, LLC, LHF

PRODUCTIONS, INC., OUTPOST PRODUCTIONS, INC., AFTER II MOVIE, LLC,

MILLENNIUM MEDIA, INC., WONDER ONE, LLC, HITMAN TWO PRODUCTIONS,

INC., MILLENNIUM IP, INC., I AM WRATH PRODUCTIONS, INC., KILLING LINK

DISTRIBUTION, LLC, VENICE PI, LLC, RAMBO V PRODUCTIONS, INC., MON, LLC,

NIKOLA PRODUCTIONS, INC., BODYGUARD PRODUCTIONS, INC., WONDER ONE,

LLC, YAR PRODUCTIONS, INC., DALLAS BUYERS CLUB, LLC, and SF FILM, LLC

("Plaintiffs"), by and through their counsel, file this opposition to Defendant Sharktech,

Inc.'s ("Sharktech") Motion to Dismiss for Lack of Personal Jurisdiction and Improper

Venue [Doc. #17] ("Defendant's Motion").

20-032B

## I. INTRODUCTION

Sharktech does not deny that it sits atop a modern piracy ecosystem monstrosity and knowingly profits from it by supplying the essential services to its Virtual Private Network ("VPN") subscribers from its *Denver* facility despite receiving thousands of notices informing it that these VPN subscribers are using Sharktech's services *in Denver* to distribute Plaintiffs' copyright protected Works without authorization from IP ("Internet Protocol") addresses in *Denver*. Sharktech also does not deny that these VPN subscribers blatantly promote their VPN service for the purpose of movie piracy.

Nonetheless, Sharktech has the audacity to call Plaintiffs' lawsuit that seeks to stop Sharktech from continuing to knowingly feed this mile high city monster and profit from it "frivolous".  What is frivolous is Sharktech motioning to dismiss for lack of personal jurisdiction and improper venue while admitting to: (1) purposefully and knowingly leasing the facility in Colorado with H5 (*for years*) where the piracy is taking place; (2) purposefully and knowingly placing its servers and equipment used to pirate Plaintiffs' Works in the Colorado facility *for years*; (3) hiring the Colorado company Handy to service these servers and equipment in Colorado that are used to pirate Plaintiffs' Works; (4) conceding that evidence relevant to Plaintiffs' claims may reside on these servers and equipment in Colorado; and (5) its officer Tim Timrawi visiting the Colorado facility an unknown number of times to check up on Sharktech's equipment. Sharktech does not even deny that it promotes the availability of its services including servers and IP addresses in Denver. Sharktech's motion should be dismissed because Plaintiffs' claims arise from Sharktech's extensive contacts in Colorado and the business activities Sharktech intentionally

2

engages in Colorado, and important evidence for Plaintiffs' case resides in Colorado.

## II. FACTUAL BACKGROUND

Plaintiffs MILLENNIUM FUNDING, INC., LHF PRODUCTIONS, INC., HUNTER KILLER PRODUCTIONS, INC., OUTPOST PRODUCTIONS, INC., EVE NEVADA, LLC, and VOLTAGE HOLDINGS, LLC filed this action on May 7, 2021 [Doc. #1] alleging contributory copyright infringement, vicarious copyright infringement and secondary liability for Digital Millennium Copyright Act ("DMCA") violations against Sharktech and its officer Tim Timrawi. *See generally* Complaint [Doc. #1].  On August 1, 2021, original Plaintiffs MILLENNIUM FUNDING, INC., LHF PRODUCTIONS, INC., OUTPOST PRODUCTIONS, INC. and VOLTAGE HOLDINGS, LLC together with Plaintiffs AFTER II MOVIE, LLC, MILLENNIUM MEDIA, INC., WONDER ONE, LLC, HITMAN TWO PRODUCTIONS, INC., MILLENNIUM IP, INC., I AM WRATH PRODUCTIONS, INC., KILLING LINK DISTRIBUTION, LLC, VENICE PI, LLC, RAMBO V PRODUCTIONS, INC., MON, LLC, NIKOLA PRODUCTIONS, INC., BODYGUARD PRODUCTIONS, INC., YAR PRODUCTIONS, INC., DALLAS BUYERS CLUB, LLC, and SF FILM, LLC filed a First Amended Complaint ("FAC") to additionally allege negligent and fraudulent misrepresentation by Defendant Sharktech in violation of Colorado law, as well as direct and secondary liability for copyright infringements and direct liability for DMCA violations against Sharktech's subscribers Defendants Private Internet Access, Inc. ("PIA") and Defendants DOES 1-5. *See generally* FAC [Doc. #27] at ¶¶2-4.  Plaintiffs MON, LLC, Venice PI, LLC, I am Wrath Productions, Inc., and Killing Link Distribution, LLC are California entities. Wonder One, LLC is a Wyoming entity.  Dallas Buyers Club, LLC is a

3

Texas entity. SF Film, LLC is a New York entity.

Defendant Sharktech operates a data center in Denver, Colorado which it prominently promotes on its website. *See Id*. at ¶7. Here, Sharktech provides servers, colocation and Distributed Denial of Service ("DDoS") services for its customers in Colorado at its Colorado data center. *See Id*. at ¶27.



Sharktech controls the IP addresses it allocates and servers it leases to its subscribers in Colorado. *See Id*. at ¶¶10, 11. Sharktech is so dedicated to the Colorado market that it even registered its American Registry of Internet Numbers ("ARIN") handle "SHARK-9" with a Colorado address. *See Id*. at ¶8.

Sharktech is required per its agreement with ARIN to update the Whois records when it allocates or reassigns IP addresses to its VPN subscribers.  *See* Decl. of Eric Smith [Doc. #27-8] at ¶¶9-12.  Plaintiffs' agent relied on the ARIN Whois records to determine whom to send notices of infringements concerning IP addresses where it confirmed active infringements of Plaintiffs' Works. *See* Decl. of Daniel Arheidt [Doc. #27-7] at ¶¶6-7.  For example, when Plaintiffs' agent confirmed infringement of the Works

20-023W

*Angel Has Fallen* and *Distorted* at IP address 174.128.226.10, it obtained the appropriate contact for the IP address from the ARIN Whois records, which state that Sharktech in Denver is the relevant party and "FOR ABUSE RELATED QUESTIONS PLEASE EMAIL ABUSE AT SHARKTECH.NET".   Decl. of Smith at ¶¶16-19.   In reliance on the Whois records, Plaintiffs' agent sent multiple notices by email to Sharktech *exactly as Sharktech instructed* concerning piracy at this IP address. Only when original Plaintiff Fallen Productions, Inc. subpoenaed Sharktech pursuant to this Court's order in related case *Fallen Productions, Inc. v. Damian Bray*, et al, 1:20-cv-3170-PAB-NRN was it able to find out that Sharktech had actually allocated this and other IP addresses to its VPN subscriber PIA.   *See e.g.*, Exhibit "6" to FAC [Doc. #27-6]. Even worse, Plaintiffs determined that Sharktech's policy is to do absolutely nothing concerning infringement notices that are sent to it.   *See* FAC [Doc. #27] at ¶¶145-151.  If Sharktech had just taken the simplest measures such as null-routing the IP address (a technical term for blocking) or just forwarded the notice on to its VPN subscriber PIA so that PIA could forward it to the end user Robert O'Brien, the active piracy could have stopped.   *See* Decl. of Robert O'Brien [Doc. #27-10] ("I received zero warnings from…PIA or Sharktech…I would have immediately ceased using BitTorrent…had I received any of these notices earlier or had my service been temporarily terminated.")   This example is just one microcosm of the massive piracy that has happened thousands of times at servers at Sharktech's data center in Colorado.   *See* Decl. of Arheidt [Doc. #27-7] at ¶9 (nearly 400 notices of infringement sent just concerning the "174.128" IP addresses), *Id*. at ¶10 (over 1500 notices sent to Sharktech concerning piracy of the movie *Ava*).

5

20-023W

Sharktech now complains that "[o]nce an IP address is licensed to a customer such as a VPN provider, the use of that IP address is solely in the control of the Sharktech's customer, not Sharktech…Sharktech also has no control over their conduct and how they use the IP address assigned to them by the VPN provider." Defendant's Motion at pg. 5. However, Sharktech's assertion that it has no responsibility for what happens at these IP addresses tied to servers in its Denver facility contrasts starkly with Sharktech's emphatic instructions in the Whois records in all capital letters to contact *it* concerning abuse at these IP addresses. *See* Decl. of Smith at ¶18.  If Sharktech would have just updated the Whois records to indicate its VPN subscribers as the responsible party for these IP addresses *as it is supposed to do per its ARIN registration agreement* (*see* Decl. of Smith at ¶¶10-12) rather than fraudulently misrepresenting that it is responsible for these IP addresses (according to Tim Timrawi's declaration and Defendant Sharktech's Motions), the thousands of notices they disparage as "spamming" (see Defendants' Motion to Dismiss [Doc. #18] at pg. 1) would be sent to Sharktech's VPN subscribers.

This Court should not allow Sharktech to successfully argue that, because Sharktech's statement in the Whois records that Sharktech in Colorado is responsible for these IP addresses was an intentional misrepresentation, it should not have to answer for its unlawful conduct in Colorado.

### III. ARGUMENT

A plaintiff bears the burden of establishing personal jurisdiction over a defendant. *Behagen v. Amateur Basketball Ass'n of the United States*, 744 F.2d 731, 733 (10th Cir. 1984). In a pre-trial motion to dismiss, a plaintiff needs to only make a *prima facie*

6

20-023W

showing of jurisdiction. *Id*. The Court accepts the well-pled allegations of the operative pleading as true to determine whether the plaintiff has made a *prima facie* showing that a defendant is subject to the Court's personal jurisdiction. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). Indeed, any factual disputes are resolved in the plaintiff's favor. *Benton v. Cameco Corp.*, 375 F.3d 1070, 1074-75 (10th Cir.2004). "When, however, a defendant presents credible evidence through affidavits or other materials suggesting the lack of personal jurisdiction, the plaintiff must come forward with sufficient evidence to create a genuine dispute of material fact on the issue. Only if the plaintiff meets the obligation of contesting the credible evidence that the defendant presents does the court resolve the factual disputes in favor of the plaintiff." *Clark v. Meijer, Inc.*, 376 F. Supp. 2d 1077, 1082, (D.N.M. 2004) (internal citations and quotations omitted).

To obtain personal jurisdiction over a nonresident defendant, two criteria must be met: (1) the defendant must be able to be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located and (2) the exercise of personal jurisdiction under state law must comport with the Fourteenth Amendment's due process clause. *Id*. The Colorado long-arm statute confers the maximum jurisdiction permitted by the due process clauses of the United States and Colorado constitutions, and its requirements are necessarily addressed under a due process analysis. *Id.*

Personal jurisdiction comports with due process where a defendant has minimum contacts with the forum state and where those contacts are such that jurisdiction does not offend "traditional notions of fair play and substantial justice*." Int'l Shoe Co. v.*

7

20-023W

*Wash.*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Minimum contacts may be established under the doctrines of general jurisdiction or specific jurisdiction. Under specific jurisdiction, minimum contacts are present where the defendant satisfies the "purposeful direction" test which consists of three inquiries: (1) whether the defendant purposefully directed his activities at residents of the forum state; (2) whether the plaintiff's injury arose from those purposefully directed activities; and (3) whether exercising jurisdiction would offend traditional notions of fair play and substantial justice. *Dudnikov*, 514 F.3d 1063, 1070 (10th Cir. 2008). The court must ensure that a non-resident defendant is not haled into a court's jurisdiction for merely "random, fortuitous, or attenuated contacts with the forum state". *Id.* at 1071 (internal quotation omitted).

## A. Defendant Sharktech has the necessary minimum contacts with the forum state under the "purposeful direction" test.

Plaintiffs do not claim general jurisdiction. Thus, under specific jurisdiction courts look to the purposeful direction test. Here, Defendant Sharktech meets all three elements.

### 1) Defendant Sharktech purposefully directed its activities at residents of the forum state.

Although agreements alone are likely to be insufficient to establish minimum contacts, "'parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities.'" *TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd.*, 488 F.3d 1282, 1287-88 (10th Cir.2007) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473-478, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Indeed, the

8

20-023W

Supreme Court has found personal jurisdiction exists "over defendants who have purposefully `reach[ed] out beyond' their State and into another [state] by, for example, entering a contractual relationship that `envisioned continuing and wide-reaching contacts' in the forum State." *Walden v. Fiore*, ___ U.S. ___, 134 S.Ct. 1115, 1122, 188 L.Ed.2d 12 (2014) (citing *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174).

Plaintiffs have made well-plead allegations that Defendant Sharktech purposefully directed its activities to business in this forum state sufficient to satisfy the three part test for purposeful direction ((1) intentional action, (2) express aiming, and (3) knowledge of the injury).  Particularly, Sharktech intentionally contracted with businesses in this district for Sharktech's data center in Denver, Colorado. *See* FAC at ¶¶6-7. Sharktech has also intentionally contracted with VPN customers in this district such as the Colorado company Defendant PIA and likely Defendant DOES 1-5. *See Id*. at ¶¶31-34. Defendant expressly advertises its data center in Colorado.  *See Id*. at ¶7. Defendant knows that the injuries are occurring to Plaintiffs at the servers in Colorado from the notices sent by Plaintiffs' agent. *See* Decl. of Arheidt at ¶14.

Indeed, Defendant Sharktech acknowledges these business contacts through its Motion. *See* Exhibits "A"-"B" to Defendant's Motion [Docs. ##17-2, 17-3]. However, despite Sharktech's wording, these business contacts and relationships are not "random, fortuitous, or attenuated contacts" but rather continuous, long-term relationships. The contracts as shown in Exhibits "A"-"B" were both signed over five years ago and Sharktech has maintained those relationships and continues to do so. *Id*. Sharktech is seemingly so confident in the stability and continuing nature of these relationships that it

20-023W

advertises on its website of its data center in Denver, Colorado, furthering its desire to foster and promote additional business relationships in this forum state. *See* FAC [Doc. #27] at ¶7. Sharktech even explicitly registers its "SHARK-9" handle on ARIN that its address is in "Greenwood Vlg, CO". *See Id.* at ¶8. If Sharktech's contacts with this forum are only random or fortuitous, it would be highly peculiar that Sharktech would publicly advertise and register its presence in this district. Additionally, Sharktech's business relationships with Colorado companies such as Defendant PIA, and according to Defendant's Motion at least 15 other customers, highlights Sharktech's desire to do continuous business in this forum. *See* Defendant's Motion [Doc. #17] at pgs. 14-15. While, as Sharktech argues, such contacts may be insufficient for general jurisdiction, Plaintiffs assert that they are more than sufficient for specific jurisdiction because Plaintiffs' claims arise out of these contacts with Colorado.

Defendant Sharktech also states that all high-level operations were conducted in Nevada, but that is irrelevant to whether it purposefully directs its activities to this forum and its residents. *See Id*. at pgs. 8-10. Indeed, many if not most companies conduct high-level operations at their headquarters or principal place of business. If this reasoning is sufficient to preclude personal jurisdiction in non-resident forums where corporations do business, the personal jurisdiction requirement is all but hollow and could be only afforded in the forum of a corporation's principal place of business. Instead, courts specifically look to intentional conduct by defendants in non-resident forums to determine their purposeful direction, as the court does here. Such is the case here, Sharktech has intentionally chosen to lease a facility in Colorado, place its servers in this facility in Colorado, assign

20-023W

its IP addresses to the servers in the Colorado address, register its ARIN handle with the Colorado address of this facility and advertise the availability of its services in Colorado. *Supra.*  For at least the reasons above, Defendant Sharktech has purposefully directed its conduct at this forum and its residents in this case.

**2) *Plaintiffs' injuries arose from Defendant Sharktech's purposefully directed activities.***

Plaintiffs have made well-pled allegations of Plaintiffs' harm in Colorado arising from Defendant Sharktech's purposefully directed activities. Due to Sharktech's contribution towards its subscribers' distribution of Plaintiffs' Works, Plaintiffs have suffered damages such as lost profits, price erosion, and a diminution of the value of their copyrights. *See* FAC [Doc. #27] at ¶¶212; 253-256; 267-268; 272-273. Indeed, Sharktech had knowledge that its subscribers were infringing Plaintiffs' Works and distributing file copies of the Works with altered Copyright Management Information from the servers in Colorado, but still continued to provide service to its subscribers. *See Id.* at ¶¶214-221; 224-228; 251-252.

Nonetheless, Sharktech makes the disingenuous argument that no injury has occurred in Colorado because even though the infringements occurred at Sharktech's facility in Denver, "the accused direct infringers could have conducted the same activity with or without VPN services."  Defendant's Motion [Doc. #17] at pg. 17.  According to this bizarre logic, no tort is sufficient for jurisdiction in Colorado if it could have been committed in a different state. Defendant provides no support for this absurd assertion which is contradicted by the fact that Sharktech's customer PIA is a company

20-023W

headquartered in Colorado. *See* FAC [Doc. #27] at ¶9. Plaintiffs assert that PIA directly infringes Plaintiffs exclusive rights of distribution and reproduction. *See, e.g., id. at* ¶93.

In *Intercon, Inc. v. Bell Atlantic Internet Solutions., Inc.*, 205 F.3d 1244 (10th Cir. 2000) the Tenth Circuit found personal jurisdiction in Oklahoma was appropriate over a defendant that routed Internet traffic through the plaintiff's server in Oklahoma. *Id.* at 1246. Such is the case here since Sharktech's VPN subscribers pirate Plaintiffs' Works on servers in Colorado. Even when the Tenth Circuit later distinguished *Intercon* in *XMission, L.C. v. Fluent Ltd. Liab. Co.*, Co., 955 F.3d 833 (10th Cir. 2020), it distinguished it by focusing on the fact that the defendant in *Intercon* "knew it was improperly using a server located in the forum State." *Id.* at 844. In the present case, Sharktech *knows* that its subscribers such as PIA are using a server in Colorado to pirate Plaintiffs' Works from the notices, because Sharktech put the servers in Colorado, Sharktech advertises the availability of its servers in Colorado and Sharktech leased the servers to the VPN subscribers such as PIA. Accordingly, Sharktech's assertion that *XMission* supports its position is incorrect.

**3) Exercising jurisdiction over Defendant Sharktech would not offend traditional notions of fair play and substantial justice.**

Courts look to the following five factors when determining if jurisdiction over a defendant would offend traditional notions of fair play and substantial justice: (1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the

12

shared interest of the several states or foreign nations in furthering fundamental social policies. *Dudnikov*, 514 F.3d 1063, 1080 (10th Cir. 2008). The factors weigh in favor of exercising jurisdiction over Sharktech.

First, there is no significant burden on Defendant Sharktech to be haled into court in this jurisdiction. Indeed, by purposefully gaining the "protections or benefits of the state's laws" Sharktech "should reasonably anticipate being haled into court there." *Marcus Food Co. v. DiPan*filo, 671 F.3d 1159, 1167 (10th Cir. 2011) (quoting *Burger King*, 471 U.S. 462, 473-76, 105 S.Ct. 2174 (1985). As discussed above, Sharktech purposefully directed its conduct to this forum in order to continuously generate business in this forum. Sharktech cannot simply pick and choose when to gain the benefits of this forum without any of the responsibilities. Moreover, neither Nevada nor Montana (Sharktech's state of incorporation) is burdensomely far from Colorado. Indeed, either flight would take less than two hours. *See* Exhibit "A"; *see also C5 Med. Werks, LLC v. CeramTec GmbH*, No. 14-cv-00643-RBJ, 2014 U.S. Dist. LEXIS 124989, at *14 (D. Colo. Sep. 8, 2014)(finding the burden of travel from Germany to Denver to be "minimal given the relatively convenient nature of modern air travel"). Mr. Timrawi just visited Denver within the last two years and admits to having visited Colorado "a handful of times on behalf of Sharktech".  Decl. of Timrawi [Doc. #17-1] at ¶6.

Second, this forum has great interest in resolving this dispute. The infringements alleged in the FAC all occurred in Colorado at IP addresses of Sharktech's servers in Sharktech's Colorado facility by Sharktech's subscribers. *See* Exhibit "2" to FAC [Doc. #27-2]; FAC at ¶¶80-87.   A subpoena to inspect the servers at the data center or to

13

depose Sharktech's Handy Network contractors would not be enforceable in Nevada because it would be beyond the geographic limits of Fed. R. Civ. Pro. 45(c).  Further, the end users that used Sharktech's servers to download torrent files from the piracy website YTS likely reside in Colorado or nearby since a Colorado IP address was used. *See* Exhibit "3" to FAC [Doc. #27-3]; FAC at ¶¶63-70.  Because the copyright infringements occurred in Colorado, Colorado theaters and retail stores lost opportunities to legitimately sell these movies and the Colorado government lost potential sales tax revenue.  *See* FAC at ¶221. Accordingly, Colorado has a great interest in resolving this dispute. *See C5 Med. Werks, LLC,* No 14-cv-00643-RBJ at *14 ("Colorado has an interest in seeing that its companies operate appropriately under existing intellectual property law"); *see also MacAlmon Music, LLC v. Maurice Sklar Ministries, Inc.*, Civil Action No. 13-cv-02471-PAB-CBS, 2015 U.S. Dist. LEXIS 22598, at *24-25 (D. Colo. Feb. 4, 2015)("it is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work") (internal quotation marks and citations omitted).

Third, Plaintiffs' prayer for relief includes a request for an injunction that will have to be implemented at Defendant Sharktech's servers in Colorado. *See* FAC ¶¶253; (C). Thus, resolution of this action would be most efficient and convenient in this forum.

Fourth, as discussed more below, Plaintiffs chose this forum in order to most effectively and efficiently receive the relief they deserve. Specifically, Plaintiffs seek to utilize witnesses in this district and to join Sharktech's subscribers in this forum, such as

14

20-023W

Defendant PIA and possibly Defendant DOES 1-5, who also used Sharktech's servers in Colorado to distribute Plaintiffs' Works.

Fifth, as well-pled in the FAC, Plaintiffs allege that Defendant Sharktech's conduct violates the Copyright Act, public policy as a whole and Colorado law of misrepresentation. *See* FAC at ¶¶3; 221. This forum has a significant interest in furthering the exclusive rights of the Copyright Act, enforcing protections against the rampant piracy as allowed by Defendant Sharktech's conduct and preventing misrepresentations in violation of Colorado law.

**3) Tim Timrawi's declaration should not be considered because it includes contradictory statements and is contradicted by statements made by Sharktech on its website.**

Mr. Timrawi states that in paragraph 2 of his declaration that that the "only affirmative action Sharktech is capable of taking to stop alleged infringement by a VPN provider's customers' through traffic transmitting through Sharktech's networks would be to proactively terminate all of its existing contracts with VPN providers and then refuse to accept and VPN providers as customers…" Decl. of Timrawi [Doc. #17-1] at ¶2.

This statement is absurd. Even in the year 2021, an electrical device such as the Xeon server (*see* Exhibit "6" [Doc. #27-6] to the FAC) Sharktech leases to subscriber PIA who used it to pirate Plaintiffs' Works can be turned off by merely being unplugged. *See* Colocation, https://sharktech.net/colocation/ [last accessed on Aug. 1, 2021] (Sharktech provides the power for the servers such as a 1xC13 outlet). Moreover, Mr. Timrawi knows that Sharktech could easily null route the IP addresses at issue to stop any activity at a

20-023W

particular IP address.  Plaintiffs know this because Sharktech makes this fact clear on its website in the terms and services section where it states that it will null-route a subscriber's service "…to prevent interference to the service Sharktech provides to other clients." Terms of Service at ¶26, https://sharktech.net/terms-of-service/ [last accessed at August 1, 2021 ]("Clients may not initiate attacks against their own servers to "stress test" … Attacks that are network impacting are subject to null routing or other necessary measures….")

Mr. Timrawi states that "Sharktech does not operate or control the infrastructure that it provides to its customers…"  Decl. of Timrawi at ¶2.  However, later Mr. Timrawi contradicts himself by stating that "…any relevant access, logging and other operating information…would normally originate and be accessible to Sharktech in Las Vegas, Nevada…".  *Id*. at ¶5.  That is, when it suits Sharktech to argue that they are not liable for their subscribers' piracy, Mr. Timrawi states that they have no control over the data and there is nothing they can do, but when it suits Sharktech to argue that venue should be in Nevada, suddenly the data is readily there and accessible to him in Nevada.

The multiple contradictions in Mr. Timrawi's declaration render it not credible. Pursuant to *Clark*, *supra,* this Court should disregard Mr. Timrawi's declaration and only consider the well pleaded allegations in the FAC which support personal jurisdiction in Colorado. Alternatively, this Court should find that Plaintiffs have submitted sufficient evidence to create a genuine dispute of material fact on the issue and resolve the factual disputes in favor of the Plaintiffs.

**B) Venue is proper in this district.**

16

**1) This district is the proper venue.**

28 U.S.C. § 1391(b) states that a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Plaintiffs allege, *inter alia*, that venue is proper in this district because all or a substantial part of the events of omissions giving rise to the claims occurred in this district and because Defendant Sharktech is subject to the court's personal jurisdiction. As discussed above, Plaintiffs respectfully assert that the infringements alleged in the FAC all occurred in Colorado at IP addresses of Sharktech's servers in Sharktech's Colorado facility. *See* Exhibit "2" to FAC [Doc. #27-2]; FAC at ¶¶80-87. The IP addresses registered under the handle "SHARK-9" on ARIN explicitly states that Sharktech's address is in Colorado. *See* FAC at 8. Further, the end users that used Sharktech's servers to download torrent files from the piracy website YTS likely reside in Colorado or nearby since Colorado IP addresses were used. *See* Exhibit "3" to FAC [Doc. #27-3]; FAC at ¶¶63-70.

In sum, the infringements occurred at Colorado IP addresses on servers in Colorado likely by Colorado residents and Sharktech knew it was occurring. Plaintiffs also emphasize that Defendant Sharktech is subject to this court's personal jurisdiction under specific jurisdiction. Accordingly, Plaintiffs assert that venue is proper in this district.  If venue was transferred to Nevada, Plaintiffs would lose the opportunity to join Sharktech's

20-023W

subscribers such as PIA and end users as defendants.  Further, a Court in Nevada would be unable to enforce a subpoena to Sharktech's customers in Colorado or the individuals that service Sharktech's servers in Colorado.

**2) *This court should deny Defendant Sharktech's request to transfer venue.***

Defendant Sharktech alternatively requests a transfer of venue to Nevada. *See* Defendant's Motion [Doc. #17] at pgs. 20-22. The Tenth Circuit has identified several factors that should be considered by a district court when ruling on a motion to transfer:

> the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws, the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir.1991).

When a party files a motion to transfer venue, the moving party has the burden to prove inconvenience to the parties and witnesses. *Rivendell Forest Prods., Ltd. v. Canadian Pacific Ltd.,* 2 F.3d 990, 993 (10th Cir.1993). Unless the moving party carries its burden to prove inconvenience to the parties and witnesses and the balance is "strongly" in favor of the moving party, the plaintiff's choice of forum should not be disturbed. *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir.1992).

First, the accessibility of witnesses and other sources of proof, as well as the cost of making the necessary proof are in Plaintiffs' favor. Plaintiffs chose this forum because of its convenience and accessibility to Colorado witnesses and additional defendants. For

20-023W

example, Plaintiffs seek to add additional defendants to the instant action, particularly Sharktech's subscribers who are situated in this district as Plaintiffs have done with Defendant PIA. Should this Court decide to grant Sharktech's request for a venue transfer to Nevada, the issue of venue will be inefficiently raised again in relation to additional defendants. Indeed, venue would be destroyed in Nevada should Plaintiffs add more of Sharktech's Colorado subscribers as defendants.

Despite Sharktech's claims that "it is highly unlikely that any relevant evidence would be stored on Sharktech's Data Center equipment in the ordinary course of business," (*see* Defendant's Motion at pg. 8; Decl. of Timrawi at ¶5), Plaintiffs believe that it is highly likely Sharktech's servers in Colorado would store valuable evidence and information regarding the alleged infringements, data records, and other technical information not available at Sharktech's Nevada headquarters.  Even Mr. Timrawi's declaration does not unequivocally state that no relevant evidence would be on this equipment. *See* Decl. of Timrawi at ¶5 ("…it is *highly unlikely* that any evidence…would be stored…). Moreover, the individuals at this data center that contracted with Sharktech and serviced these servers will also have relevant information.  Further, Plaintiffs will seek to subpoena the end users who are likely in Colorado that used Sharktech's servers in Colorado to pirate Plaintiffs' Works.  *See* Exhibit "3" to FAC [Doc. #27-3] at ¶63-70.  Plaintiffs would still have to subpoena these individuals in Colorado and enforce these subpoenas in Colorado.

Moreover, Defendant Sharktech brings only conclusory arguments in its request to transfer venue. Particularly, Sharktech fails to "provide any specifics about the subject

19

20-023W

matter of the…[Nevada] witnesses' knowledge or the nature of the documents located in…[Nevada]." *Sleepy Lagoon, Ltd. v. Tower Group, Inc.,* 809 F. Supp. 2d 1300, 1313 (N.D. Okla. 2011) (rejecting defendant's motion to transfer venue). District courts must "consider not only the number of witnesses located in another forum, but also the 'quality or materiality of the testimony' of the out-of-state witnesses, the willingness of those witnesses to come to the forum state, whether deposition testimony would be satisfactory, and whether it would necessary to subpoena the out-of-state witnesses." *Id*. (quoting *Scheidt*, 956 F.2d at 966). As in *Sleepy Lagoon,* Sharktech fails to offer any evidence as to these factors and certainly do not meet the high bar to show that the *Chrysler* factors are "strongly" in favor of Sharktech. Keeping in mind that this Court must resolve all disputed facts and draw all reasonable inferences in the Plaintiffs' favor, Sharktech's arguments cannot stand for this Court to grant Sharktech's motion to transfer venue.

Second, Plaintiffs assert that the difficulties that may arise from congested dockets are strongly advantageous in this forum. According to the United States District Court Management Statistics for March 31, 2021, the District of Colorado had 3,951 pending cases with an average of 7.6 months from filing to disposition in civil cases. The District of Nevada, on the other hand, had 4,972 pending cases with an average of 9.1 months from filing to disposition in civil cases. *See* https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison0331.2021.pdf [last accessed July 27, 2021]. Thus, the District of Nevada has a much more congested docket with a longer timeframe for civil case disposition.

Third, Plaintiffs assert that additional factors such as the enforceability of a

judgement, possibility of conflict of laws, and having a local court determine questions of local law favor Plaintiffs. In the FAC, the Plaintiffs request a permanent injunction ordering Sharktech and PIA to *inter alia* cease contributing to infringements of Plaintiffs' Works and DMCA violations in their prayer for relief. This injunction would be enforced at Sharktech's facility in Denver. Moreover, Colorado law applies to Sharktech's negligent and fraudulent misrepresentations in the Whois data, because the IP addresses at issued are tied to servers in the Denver facility and Sharktech itself put a Colorado address in the Whois records.  *See* Decl. of Eric Smith at ¶18.

Finally, with regards to the remaining factors including the relative advantages and obstacles to a fair trial and "all other considerations of a practical nature that make a trial easy, expeditious and economical", Plaintiffs respectfully assert that Plaintiffs' choice of forum best meets these factors. This venue is easy, expeditious and economical for Defendant Sharktech since Tim Timrawi "visited Colorado a handful of times on behalf of Sharktech" and most recently in 2019 (also the last time most of the world traveled before the global pandemic shut down travel). *See* Decl. of Timrawi [Doc. #17-1] at ¶6. Sharktech is even represented by Colorado-based counsel. *See C5 Medical Werks, LLC,* No. 14-cv-00643-RBJ at *14 (finding local Denver-based counsel to further minimize burden). This venue is easy, expeditious and economical for potential Colorado defendants and witnesses. Finally, despite Sharktech's conclusory assumptions otherwise, this venue is easy, expeditious and economical for Plaintiffs.  Not all of the Plaintiffs are Nevada entities.  Accordingly, Plaintiffs reiterate that venue is proper in this district and this court should deny Sharktech's motion for venue transfer.

20-023W

## IV. CONCLUSION

Sharktech has made its bed in Colorado by promoting its Colorado data center, intentionally placing its servers in the Colorado data center, leasing servers and allocating IP addresses in Colorado tied to these servers to subscribers, registering its Denver address in the Whois records for these IP addresses and purposefully ignoring the massive piracy that was occurring at its servers in Denver.   Having made its bed in Colorado by conducting business and profiting in Colorado, it should be content to lie in it in Colorado in the evenings and come to a Court in Denver during the day to address its illegal activities.   Accordingly, Plaintiffs ask this Court to deny Defendant Sharktech's Motion to Dismiss for personal jurisdiction and improper venue and deny Defendant Sharktech's request to transfer venue.

DATED: Kailua-Kona, Hawaii, Aug. 2, 2021.

/s/ Kerry S. Culpepper
Kerry S. Culpepper
CULPEPPER IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawaii 96740
Telephone:   (808) 464-4047
Facsimile:    (202) 204-5181
E-Mail:        kculpepper@culpepperip.com
Attorney for Plaintiffs

20-023W

---

## CERTIFICATE OF SERVICE

---

I hereby certify that on the date below I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Andrea M. LaFrance     alafrance@bhfs.com, kmeade@bhfs.com, pchesson@bhfs.com

Airina Lynn Rodrigues     arodrigues@bhfs.com, kmeade@bhfs.com

Laura B. Langberg     llangberg@bhfs.com, kmeade@bhfs.com

DATED: Kailua-Kona, Hawaii, August 2, 2021.

CULPEPPER IP, LLLC

/s/ Kerry S. Culpepper
Kerry S. Culpepper
Attorney for Plaintiffs

20-023W